HNA Holdings 422 Fulton (GP) LP v TSCE 2007 422 Fulton GP, L.L.C.
2026 NY Slip Op 03508
June 4, 2026
Appellate Division, First Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

HNA Holdings 422 Fulton (GP) LP et al., Plaintiffs-Respondents,
v
TSCE 2007 422 Fulton GP, L.L.C., Defendant/Counterclaim Plaintiff-Appellant, HNA Investment Holding Co., Ltd. Additional Counterclaim Defendant-Respondent.

Decided and Entered: June 04, 2026
Index No. 651573/20|Appeal No. 5578|Case No. 2025-01985|
Before: Manzanet-Daniels, J.P., Kapnick, Rosado, Michael, Hagler, JJ.

Gibson, Dunn & Crutcher LLP, New York (Robert L. Weigel of counsel), for appellant.
Oberdier & Ressmeyer LLP, New York (Carl W. Oberdier of counsel), for respondents.

[*1]
Order, Supreme Court, New York County (Joel M. Cohen, J.), entered March 31, 2025, which, to the extent appealed from as limited by the briefs, denied defendant's motion for summary judgment, granted plaintiffs' motion for summary judgment as to liability on their breach of contract claim and dismissing defendant's counterclaims for breach of contract and attorneys' fees under a guaranty, unanimously reversed, on the law, plaintiffs' motion denied, defendant's motion for summary judgment dismissing plaintiffs' breach of contract claim granted, defendant's counterclaims reinstated, and the issue of whether plaintiff is entitled to dismissal of defendant's counterclaims remanded for a determination on the merits consistent with this order.
The interpretive dispute in this action boils down to whether the language of section 3.02(e) of the parties' limited partnership agreement (LPA), which delineates the consequences of a partner's failure to fund mandatory capital calls — including the "permanent[] los[s]" of "all" "approv[al]" rights — stripped plaintiffs of their right in section 6.01(e) to consent to "Major Decision[s]" on the project following their default. We find that it does, and that the motion court should not have granted plaintiffs' motion for summary judgment as to liability on the plaintiffs' breach of contract claim.
The parties entered into the LPA in 2016 to redevelop a Macy's store in Brooklyn. Under the LPA, plaintiffs were to fund the vast majority of the project, essentially serving as the equity partners, and defendant was the managing partner with "complete and exclusive authority" to manage the partnership. An exception to defendant's exclusive decision-making authority was that plaintiffs had consent rights with respect to 21 enumerated "major decisions," as set forth in section 6.01(e) (the major decisions provision). However, if plaintiffs failed to meet their required share of mandatory capital contributions, there were adverse consequences to plaintiffs' veto and approval rights, as set forth in section 3.02(e) (the penalty provision). The LPA is governed by Delaware law.
The penalty provision states in relevant part that "[n]otwithstanding anything herein to the contrary," a partner's failure to make a mandatory capital contribution would cause the nonfunding partner to "permanently lose all of its rights (if any) to (i) vote on or approve any matters that would otherwise require its approval pursuant to this Agreement" and the forfeiture of its board seat. The major decisions provision, states that "[n]otwithstanding anything to the contrary contained in this Agreement, without the prior written consent of [plaintiffs]," defendant could not take actions constituting "major decisions" as set forth in that section, including to "approve any modification to the Development Budget or the Business Plan."
[*2]
As construed under Delaware law, the motion court improperly read the major decisions provision to require defendant to seek plaintiffs' written consent to the major decisions set forth in that section, even if plaintiffs' failure to make capital contributions resulted in the loss of their voting and approval rights under the penalty provision. The language of the penalty provision is indisputably broad, with the phrase "approve any matters" unambiguously encompassing plaintiffs' major decision "consent" rights in the major decisions provision. If the parties had wished to limit the broad scope of the penalty provision, they could have done so explicitly. The fact that the parties did not cross-reference the major decisions provisions in the penalty provision (as it did in other provisions, such as section 6.08[c] of the LPA) does not change this result.
In coming to the opposite conclusion, Supreme Court determined that the linguistic variations in the two "notwithstanding" clauses prefacing the major decisions provision and the penalty provision dictated that the major decisions provision took precedence. Thus, Supreme Court found that the use of the word "herein" in the penalty provision applied only to the other terms of the penalty provision (as opposed to the entire LPA). We disagree with this reading, particularly since Delaware courts have interpreted the word "herein" as referring to the entire contract, which plaintiffs do not dispute (see e.g. Arkray Am., Inc. v Navigator Bus. Solutions, 2023 WL 4862686, *4-5, 2023 Del Super LEXIS 361, *11-12 [Del Super, July 18, 2023, C.A. No. N20C-12-012 MMJ CCLD]; see also Surf's Up Legacy Partners v Virgin Fest, LLC, 2021 WL 117036, *12, 2021 Del Super LEXIS 32, *27-28 [Del Super, Jan. 13, 2021, C.A. No. N19C-11-092 PRW CCLD]). The parties consistent use of the word "herein" throughout the LPA to refer to the entire agreement confirms that this was the parties' intention.
While "notwithstanding" language can sometimes evince an intent that the clause it modifies will outrank all other contractual terms (see e.g. Estate of Crist, 863 A2d 255, 258 [Del Ch 2004], affd 879 A2d 602 [Del 2005]), this is not the case here. General "notwithstanding" language is used repeatedly throughout this LPA (and indeed prefaces both of the relevant provisions at issue), which was likely a product of inartful drafting rather than a specific intent to prevail over other contractual provisions.
[*3]
Nor is there anything specifically "contrary" to the major decisions provision in the penalty provision. The purpose of the major decisions provision is generally to bestow rights to plaintiffs; the purpose of the penalty provision is to take them away upon a party's default, which indisputably occurred here. It is well settled that the "more specific provisions [in a contract] will generally prevail over" and "qualify the meaning of the general ones" (Reybold Venture Group XVI LLC v Furniture Servs. Unlimited, LLC, 2014 WL 7010757, *5, 2014 Del Super LEXIS 623, *13-14 [Del Super, Nov. 16, 2014, C.A. No. N10C-05-078 RRC], affd 115 A3d 1215 [Del 2015]).
Given our dismissal of plaintiffs' breach of contract claim, we need not address Supreme Court's findings with respect to damages, as the issue is now moot.
Supreme Court did not address the issues relating to the guaranty on the merits, dismissing defendant's counterclaims primarily on its finding that defendant materially breached the LPA and thus had failed to establish an underlying debt by the principal obligor. The court also did not address the issue of whether the issuance of nonrecourse default loans relieved plaintiff of its guarantor liability. Thus, given that a full record has not been developed on these issues, we remand to Supreme Court for a determination of whether plaintiffs are entitled to dismissal of defendant's counterclaims.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 4, 2026